

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAKIRA CRAWLEY o/b/o Z.D.B.,                    6:19-CV-6149-MJR

                                Plaintiff,                    DECISION AND ORDER

        -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                                Defendant.

_____

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

        Plaintiff Shakira Crawley brings this action pursuant to 42 U.S.C. §§405(g) and

1383(c)(3) on behalf of her child, Z.D.B., seeking judicial review of the final decision of

the Commissioner of Social Security denying Z.D.B. Supplemental Security Income

Benefits ("SSI") under the Social Security Act (the "Act").   Both parties have moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, Crawley's motion (Dkt. No. 12) is denied and the

Commissioner's motion (Dkt. No. 13) is granted.

## BACKGROUND[2]

        On September 21, 2015, Crawley filed an SSI application on behalf of her child,

Z.D.B., alleging that Z.D.B. has been disabled since November 1, 2010. [3]  (Tr. 43)  Born

on October 19, 2003, Z.D.B. was eleven-years old at the time his mother filed the disability

---

[1]  Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).
[2]  The Court assumes the parties' familiarity with the case.
[3]  References to "Tr." are to the administrative record in this case.

application on his behalf.  (Tr. 43)  The application was denied on January 21, 2016, after

which Crawley timely requested a hearing before an Administrative Law Judge.  (Tr. 77-

88, 89-91, 512)  On March 6, 2018, Crawley and Z.D.B. appeared with counsel before

Administrative Law Judge Michael W. Devlin (the "ALJ") for a hearing.  (Tr. 36-67)  On

May 18, 2018, the ALJ issued his decision denying Z.D.B.'s SSI claim.  (Tr. 12-35)

Crawley requested review by the Appeals Council, but on December 28, 2018, the

Appeals Council denied Crawley's request, making the ALJ's decision the final decision

of the Commissioner.  (Tr. 1-6, 116-68)  This action followed.

## DISCUSSION

I.    _Scope of Judicial Review_

The Court's review of the Commissioner's decision is deferential.  Under the Act,

the Commissioner's factual determinations "shall be conclusive" so long as they are

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted).  "The substantial evidence test applies not only to findings on basic

evidentiary facts, but also to inferences and conclusions drawn from the facts."  _Smith v._

_Colvin_, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

rests on adequate findings supported by evidence having rational probative force," the

Court may "not substitute [its] judgment for that of the Commissioner."  _Veino v. Barnhart_,

312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically

3

determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III.    *The ALJ's Decision*

The ALJ first found that Z.D.B. was a "school-age child" on the date of the application and an "adolescent" at the time of the hearing decision. (Tr. 18) The ALJ then followed the three-step process for evaluating Z.D.B.'s SSI claim. At the first step,

4

the ALJ found that Z.D.B. has not engaged in substantial gainful activity since September 21, 2015, the date of his SSI application. (*Id.*) At the second step, the ALJ determined that Z.D.B. has the severe impairment of attention-deficit hyperactivity disorder ("ADHD"). (*Id.*) At the third step, the ALJ found that Z.D.B. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19) The ALJ then proceeded to consider whether Z.D.B. has an impairment or combination of impairments that functionally equals the Listings, but concluded that Z.D.B. does not because Z.D.B. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 19-31) As a result, the ALJ held that Z.D.B. has not been disabled within the meaning of the Act since the March 17, 2015 application date. (Tr. 31)

IV.    *Crawley's Challenge*

Crawley argues that substantial evidence does not support the ALJ's conclusion that Z.D.B. does not have an impairment that functionally equals the Listings. (See Dkt. No. 12-1 (Crawley's Memo. of Law)) In particular, Crawley argues that the ALJ erred in concluding that Z.D.B. has only less than marked limitations in the domains of interacting and relating with others and caring for himself.[4] (*Id.*) For the reasons that follow, the Court rejects this argument and finds that the ALJ's disability determination was supported by substantial evidence.

---

[4] The ALJ also found that Z.D.B. has less than a marked limitation in acquiring and using information; less than a marked limitation in health and physical well-being; and no limitation in moving about and manipulating objects. Crawley does not raise any specific objections to the ALJ's conclusions in these domains. In rendering a decision as to Crawley's objections, the Court has considered the record in its entirety and finds that substantial evidence supports the ALJ's conclusions as to these domains as well.

## Domain of Interacting and Relating with Others

The domain of interacting and relating with others considers how well a child initiates and sustains emotional connection with others, develops and uses the language of their community, cooperates with others, complies with rules, responds to criticism and respects and takes care of the possessions of others.  20 C.F.R. §416.926a(i).  The Commissioner has set forth certain "[a]ge group descriptors" to help determine whether school-age or adolescent children are limited in this domain. [5]  The Commissioner's regulations provide that a school-age child should be able to develop more long-lasting friendships with children their age; should begin to understand how to work in groups; and should have an increasing ability to understand another's point of view as well as tolerate differences.  20 C.F.R. §416.926a(i)(2)(iv).  A school-age child should also be able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners can understand.  (Id.)  The Commissioner's regulations provide that an adolescent should be able to initiate and develop friendships with children of the same age; relate appropriately to children and adults; and begin to solve conflicts between themselves and peers as well between themselves and both familiar and unfamiliar adults.  20 C.F.R. §416.926a(i)(2)(v).  An adolescent should be able to intelligently express their feelings; ask for assistance in getting their needs met; seek information; and tell stories.  (Id.)  Some examples of limited functioning that children of different ages have in this domain include having no close friends of similar age; avoiding or withdrawing from people they know; feeling overly anxious or fearful of meeting new

---

[5] Because Z.D.B. was a school-age child at the time of the application and an adolescent at the time of the hearing decision, the ALJ included age group descriptors for both age categories.

people or having new experiences; difficulty playing games or sports with rules; difficulty communicating with others; and difficulty speaking intelligently or with adequate fluency. 20 C.F.R. §416.926a(i)(3)(ii)-(vi).

Bryn Kowba, Z.D.B.'s special education teacher, completed a Teacher Questionnaire in February of 2018. (Tr. 543-50)  Therein, Kowba assessed Z.D.B.'s academic and social functioning in the classroom. (*Id.*)  With respect to Z.D.B.'s ability to interact and relate with others, Kowba opined that Z.D.B. had obvious problems in seeking attention and expressing anger appropriately; asking permission appropriately; and respecting or obeying adults in authority. (*Id.* 546)  Kowba noted either no problems or only slight problems in Z.D.B.'s ability to play cooperatively with other children; manage and keep friends; follow rules; relate experiences and tell stories; use appropriate language; introduce and maintain relevant and appropriate topics of conversation; take turns in conversation; interpret facial expressions, body language, hints and sarcasm; and use adequate vocabulary and language to express thoughts and ideas in everyday conversation. (*Id.*)  In his decision, the ALJ noted that Kowba's opinion supported a finding that Z.D.B. has a less than marked limitation in interacting and relating with others. (Tr. 23)  Indeed, Kowba did not find Z.D.B. to have a serious or very serious problem in any specific category in this domain and, in the majority of the relevant categories, Kowba found Z.D.B. to have either no problems or only slight problems.  Crawley argues that the ALJ's conclusion was erroneous because he failed to consider that Kowba's opinion of Z.D.B.'s ability to interact and relate with others was based upon Z.D.B.'s performance in a highly structured education setting.  Specifically, at the time the Teacher Questionnaire was completed, Z.D.B. was in highly structured classroom setting, namely an eight-to-

7

one-to-two class, with some additional accommodations. (Tr. 546) Kowba had also implemented behavior modification strategies for Z.D.B. including removal from the classroom to a "cool-down zone" when necessary, and time with a social worker or other trusted adult. (*Id.*)

The Commissioner's regulations dictate that when a claimant is in a structured educational setting, the ALJ must evaluate the effect of that setting on the claimant. 20 C.F.R. §416.924a(b)(5)(E)(iv). Because such a setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [he or she has] or would have outside the structured setting." *Id.* Indeed, the ALJ is required to consider whether the claimant "would continue to function at an adequate level without the structured or supportive setting." *Id.* "Although the hearing officer need not make explicit reference to the effects of a structured or supportive setting in order to be deemed to have sufficiently considered them," remand is appropriate when it is evident that the ALJ did not consider this factor. *Archer v. Astrue*, 910 F. Supp. 2d 411 (NDNY 2012); *Shatraw, ex rel. K.C.Y. v. Astrue*, 7:11-CV-13, 2012 U.S. Dist. LEXIS 21931 (NDNY Feb. 22, 2012).

Contrary to Crawley's argument, the ALJ did not exclusively rely on Z.D.B.'s functioning in a structured educational setting in determining that Z.D.B. has less than a marked limitation in interacting and relating with others. In fact, in the section of his decision specifically addressing Z.D.B.'s functioning in this domain, the ALJ relies most heavily on Z.D.B.'s communication and cooperation during his mental health treatment sessions and exams. (Tr. 27) These exams and sessions took place outside of Z.D.B.'s controlled educational environment. For example, treating psychiatrist Dr. Temitope

Oyegbile found Z.D.B.'s mental exam to be largely within normal limits, and noted that Z.D.B. had a bright affect and good mood. (Tr. 21, 641) As recognized by the ALJ, Licensed Clinical Social Worker Sarah Itkin performed numerous mental status examinations of Z.D.B. which were consistent with his ability to interact and relate appropriately with others. (Tr. 21, 644, 647, 649, 650, 655) Specifically, she noted Z.D.B.'s cooperative attitude, appropriate behavior, calm motor activity, logical thought process, appropriate speech, and euthymic mood. (*Id.*) Itkin's reports also describe Z.D.B. as very friendly. (Tr. 650) The ALJ further relied on Licensed Marriage and Family Therapist Jennifer Bruno's mental status examination of Z.D.B., which revealed cooperative attitude, good eye contact, calm appropriate behavior, goal directed thought content, and euthymic mood. (Tr. 21, 594) Bruno also noted that Z.D.B.'s strengths included getting along well with peers. (Tr. 595) The ALJ also referenced Z.D.B.'s testimony, during the hearing, that he has friends inside and outside of school with whom he gets along well, and that he enjoys playing basketball, football, games, and communicating with people. (Tr. 20, 64-63)

Moreover, as required by the Commissioner's regulations, the ALJ recognized that Z.D.B. was receiving additional academic and social supports through his IEP[6], and appropriately weighed this information in assessing Z.D.B.'s social functioning in general. The ALJ noted that, on January 25, 2017, School 8 Roberto Clemente's Subcommittee on Special Education issued a report describing Z.D.B. as "a very friendly and likeable student", with many friends in the classroom and an ability to interact with both his peers

---

[6] An IEP or individualized education plan is a written statement for a child with a disability that includes an explanation of the special education and related services that will be provided to the child in an educational setting. (*See* https://sites.ed.gov/idea/regs/b/d/300.320)

and adults in a positive manner.  (Tr. 22, 319) (ALJ citing the January 25, 2017 report as an indication that Z.D.B. has "developed sensitivity to social dynamics.")  The ALJ further cited the finding in this report that Z.D.B. can "become verbally and physically aggressive with peers and verbally inappropriate with adults due to his highly impulsive behavior...and that he needs reminders of what are appropriate comments for school." (Tr. 22, 319)  The ALJ went on to note that Z.D.B. benefited from "a structured class with clear and consistent rules and procedures" and that Z.D.B. "needed extra time for breaks, particularly when experiencing frustration or overwhelming anger."  (Tr. 23)  Ultimately, the ALJ considered the findings set forth in these educational reports in light of the other evidence in the record, including the classroom accommodations in place for Z.D.B., the medical and treatment records, and the hearing testimony, and concluded that the evidence "showed a degree of limitation, although less than marked."  (Tr. 22-23)  This analysis demonstrates that the ALJ properly considered Z.D.B.'s functioning both inside and outside of his structured educational setting in evaluating Z.D.B.'s ability to interact and relate with others.  *See Lateachia C. v. Berryhill*, 1:17-cv-0752, 2019 U.S. Dist. LEXIS 89808 (WDNY May 24, 2009) (finding that the ALJ did not fail to consider the effect of a highly structured educational setting, where the record reflected that the child "had only mild limitations regardless of setting, and showed improvement when she made an effort and took ADHA and mood stabilizing medicine."); *Watson v. Astrue*, 07-CV-6417, 2008 U.S. Dist. LEXIS 60186 (WDNY Aug. 5, 2008) (ALJ properly considered claimant's ability to function outside a structured setting where "he considered all of the medical, non-medical, and educational evidence presented by plaintiff, including how she interacted with children during unstructured periods of recreation and play."); *Shatraw*, 2012 U.S.

Dist. LEXIS 21931, *12 (ALJ satisfied his duty to consider claimant's limitations both within and without his structured educational setting where, "[i]n addition to the findings of [the claimant's] special education teacher, the ALJ assessed the report of [the claimant's] general education teacher as well as testimony…regarding [the claimant's] functioning at home.").

Indeed, the totality of the evidence supports the ALJ's determination that while Z.D.B. did have some issues with verbal aggression and impulsive behavior, which were being addressed in his IEP, those issues did not rise to the level of a marked limitation in his ability to interact and relate to others within either a structured or an unstructured setting.  In addition to all of the evidence described above, a Behavioral Health Network report dated June 26, 2011 indicated that Z.D.B.'s friends "would say he is nice, makes people laugh, has a good imagination and is sensitive." (Tr. 610)  Treatment notes reveal that Crawley described Z.D.B. as "friendly, playful, and talkative." (Tr. 561, 580, 583)  Another school report indicated that Z.D.B. has "stable and consistent relationships with peers in the classroom as well as in the community…[and] is very likeable and quickly forms relationships with adults and peers in the community and at school." (Tr. 295, 319)

For these reasons, the Court finds that the ALJ did not err in concluding that Z.D.B. has a less than marked limitation in the domain of interacting and relating with others.

*Domain of Caring for Yourself*

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including how well he satisfies his physical and emotional wants and needs, copes with stress and changes in his environment, and takes care of his own health, possessions, and living area.  20 C.F.R. §416.926a(k).  The

Commissioner's regulations provide that a school-age child should be independent in most day-to-day activities such as dressing or bathing and should be able to recognize circumstances when he feels good about himself and when he feels bad. 20 C.F.R. §416.926a(k)(2)(iv). A school-age child should also begin to develop an understanding of what is right or wrong and what is acceptable or unacceptable behavior. *Id.* A school-age child should begin to demonstrate consistent control over his behavior, and should be able to avoid behaviors that are otherwise unsafe or not good for him. *Id.* An adolescent should be increasingly independent in all of his day-to-day activities. 20 C.F.R. §416.926a(k)(2)(v). An adolescent should also begin to develop appropriate ways to express his feelings, both good and bad, and should take medications as prescribed. *Id.* Some examples of limited functioning that children of different ages could have in this domain include not eating, dressing or bathing appropriately; engaging in self-injurious behavior (e.g. suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignoring safety rules; not spontaneously pursuing enjoyable activities or interests; and having disturbance in eating or sleeping patterns. 20 C.F.R. §416.926a(k)(3)(i)-(vi).

Crawley argues that in evaluating this domain, the ALJ failed to take into account Z.D.B.'s serious problems in handling frustration appropriately and taking needed medication on a daily basis. The Court rejects this argument and finds that the ALJ did expressly consider this evidence. To begin, the ALJ recognized that as both a school-age child and an adolescent, Z.D.B. had difficultly adhering to his ADHD medication

regime.[7]  (Tr. 29-30)  The ALJ also recognized that as an adolescent, Z.D.B. continued to "demonstrate some issues with frustration and anger." [8]  (Tr. 29-30)  However, after considering these difficulties in light of the remainder of the evidence before him, the ALJ ultimately found that these issues produced less than a marked limitation in Z.D.B.'s ability to care for himself.  In support of his finding that Z.D.B. had no more than moderate limitations in caring for himself, the ALJ noted that Z.D.B. independently sought the assistance of school health providers whenever he faced illness or injury.  (Tr. 29-30)  Indeed, educational records stated that Z.D.B. "excelled at readily stating his needs to adults."  (Tr. 319)  Other evidence in the record further supports the finding that while Z.D.B. may have had some difficulties expressing anger or frustration and consistently taking his medication, those difficulties did not seriously interfere with his ability to care for himself.  Kowba opined that Z.D.B. had no problems caring for physical needs and only a slight problem with knowing when to ask for help and using good judgment regarding personal safety and dangerous circumstances.  (Tr. 548)  Crawley represented that Z.D.B. was "a very hard worker and great helper" and "always willing to help around the house."  (Tr. 318)  In the functional report submitted in support of the SSI application, Crawley indicated that Z.D.B. could use zippers and button clothes; tie shoelaces; take a bath or shower without help; brush his teeth independently; and eat by himself using a knife, fork and spoon.  (Tr. 231)  Dr. Oyegbile noted that Z.D.B.'s judgment and insight

---

[7] The ALJ also correctly noted that evidence in the record demonstrated that Z.D.B.'s failure to consistently take his ADHD medication was sometimes attributable more to family instability, including Crawley's failure to fill his prescription or give him the correct dosage, than Z.D.B.'s own mental limitations or refusal to take the medication.  (Tr. 20-21)

[8] The ALJ correctly noted that anger and frustration is within the expected conduct of an adolescent in this domain.  (Tr. 30)  See SSR No. 2009-7p, 2009 SSR LEXIS 7,*17 (March 19, 2009) (noting that examples of typical function in the domain of caring for yourself in regard to adolescents include noticing "significant changes in his body's development, which can result in some anxiety or worry about self and body (may sometimes cause anger and frustration.").

were fair; his appearance was within normal limits; his speech was clear; and his thoughts were linear.   (Tr. 641)   Itkin found Z.D.B. to be well-groomed as well as displaying appropriate judgment and logical thought process.  (Tr. 644, 647, 649, 650, 655)  Bruno indicated that Z.D.B. displayed calm and appropriate behavior.   (Tr. 594)   Further, evidence of Z.D.B.'s ability to care for himself at home and during treatment sessions demonstrates that his competence in this area was not limited to a structured educational setting.

Indeed, the relevant question is not whether there might be some evidence in the record supporting Crawley's position, but rather whether substantial evidence supports the ALJ's decision.  *See Bonel ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.").  For all of the foregoing reasons, and after reviewing the record in its entirety, the Court finds substantial evidence exists to support the ALJ's finding that Z.D.B. has a less than a marked limitation in the domain of caring for himself.

## CONCLUSION

For the foregoing reasons, Crawley's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      June 12, 2020
              Buffalo, New York

                                                    MICHAEL J. ROEMER
                                                    United States Magistrate Judge